**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

MARK WADE GANTT,

                            Petitioner,

        v.                                              No. 12-CV-657
                                                         (MAD/CFH)

DANIEL MARTUSCELLO, Superintendent,
Coxsackie Correctional Facility,

                            Respondent.
_____

**APPEARANCES:**                        **OF COUNSEL:**

MARK WADE GANTT
08-A-3883
Petitioner Pro se
Elmira Correctional Facility
Post Office Box 500
Elmira, NY 14902

HON. ERIC T. SCHNEIDERMAN         MICHELLE ELAINE MAEROV, ESQ.
Attorney General for the                Assistant Attorney General
   State of New York
Attorney for Respondent
The Capitol
Albany, New York 12224-0341

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

Petitioner <u>pro se</u> Mark Wade Gantt ("Gantt") is currently an inmate in the custody of the

New York State Department of Correctional and Community Supervision ("DOCCS") at

Elmira Correctional Facility ("Elmira").  On April 18, 2008, Gantt pled guilty to two counts of

burglary in the second-degree before the Clinton County Court.  Dkt. Nos. 1-3 at 91–105,

_____

       [1]  This matter was referred to the undersigned for Report and Recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

10-1 at 1–17.  Gantt was sentenced to, and is presently serving, a determinate term of twelve years with five years of post-release supervision.  Dkt. No. 1-3 at 136–40.  Gantt now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his guilty plea.  Pet. (Dkt. No. 1).  Respondent Martuscello, the superintendent at Coxsackie Correctional Facility, filed a response to Gantt's petition.  Dkt. Nos. 8–10.  Gantt filed a traverse in reply to Martuscello.  Dkt. No. 13.  For the reasons that follow, it is recommended that the petition be denied.

## I.  Background

### A.  Plea Proceedings

On February 7, 2008, Gantt was arraigned on a twenty-one count indictment.  Dkt. Nos. 1-3 at 86:2–11, 1-5 at 26–39.  These criminal charges, in part, involved assault and sexual assault charges associated with June Garrow ("Garrow").  Dkt. No. 1-5 at 26–39.  The charges also included two burglaries which occurred at Garrow's residence, the first one on or about November 18, 2007 and the second between November 19, 2007 and November 27, 2007.[2]  Dkt. No. 1-3 at 101:9–102:14.

On April 18, 2008, Gantt and trial counsel appeared before the Honorable Kevin K. Ryan in Clinton County Court ("County Court") to set a trial date.  Dkt. No. 1-3 at 91:8–14. Prosecution presented a final plea offer wherein Gantt would plea guilty to two counts of burglary in the second-degree and sentenced as a second violent felony offender for twelve

---

[2]  During the first burglary, Gantt destroyed Garrow's furniture.  Dkt. No. 1-5 at 28. As for the second burglary, Gantt stole Garrow's clothing and personal effects such as body wash, body spray, and jewelry.  Id. at 29.

2

years of imprisonment with five years of parole release supervision.  Id. at 91:19:–92:4.

Prosecution also sought mandatory surcharges, fees associated with a DNA sample, waiver

of his right to appeal and bring post-conviction remedies, and an order of protection for

Garrow.  Id. at 92:4–12.  If Gantt declined to take the offer, the case would go to trial or

Gantt would have to plea to the entire indictment.  Id. at 92:12–18.  After conferring with trial

counsel, Gantt accepted the final plea offer.  Id. at 92:20–95:1.

The County Court began a plea colloquy with Gantt.  Dkt. No. 1-3 at 95:4.  Under oath,

Gantt acknowledged that he:  (1) had sufficient time to consider the offer; (2) was satisfied

with trial counsel's representation; (3) waived certain trial and appeal rights; (4) entered the

plea freely and voluntarily; (5) understood the proposed plea agreement; and (6) could be

subjected to an enhanced sentence after the County Court reviewed the pre-sentence

investigation report.  Id. at 95:4–102:14.  Throughout the colloquy, the County Court

permitted Gantt to confer with trial counsel on multiple occasions.  See, e.g., id. at 95:20–7,

97:16–20, 99:10–20.  Gantt took the plea.  Id. at  102:10–14.


### B.  First Sentencing Proceeding and Direct Appeal

On July 10, 2008, Gantt and trial counsel appeared for sentencing.  Dkt. No. 1-3 at

127–128:8.  Trial counsel moved to withdraw Gantt's guilty plea, arguing that the plea was

not knowingly and voluntarily made because Gantt did not have adequate time to consider

the offer and entered the plea under duress.  Id. at 129:9–21.  However, trial counsel

declined to support the motion because "all different variations and permutations of possible

outcomes of the various charges in this case and the sentence that attach thereto had been

reviewed . . . ."  Id. at 129:23–130:24.

3

The County Court asked Gantt the reason for withdrawing his plea. Dkt. No. 1-3 at 131:6–11. Gantt argued that he could not have committed the burglaries because he was married to and lived with Garrow. Dkt. No. 9-1 at 62:14–63:8. Further, Gantt testified that he pled guilty because he was scared and confused, which was compounded by his post traumatic stress disorder and social anxiety. Id. at 63:11–16. Moreover, Gantt produced a letter to prosecution, purportedly sent to him by Garrow, which allegedly "exonerated" Gantt. Dkt. No. 1-3 at 132:14–16. Prosecution argued that based on markings on the envelope containing the letter, it was clear that the letter was not sent by Garrow. Id. at 132:16–20. This letter was not produced at sentencing. Id. at 132:20–133:6. Prosecution further argued that Garrow and Gantt were not married and noted how Gantt failed to produce a marriage license supporting his claim of marriage. Id. at 133:7–14. Prosecution stated she had spoken with Garrow, who maintained that she did not send a letter to Gantt. Id. at 133:14–16.

Gantt submitted to this Court two letters and accompanying envelopes that Garrow had purportedly sent him. Dkt. No. 1-3 at 46–53, 56–71. While the sender addresses on both envelopes are not clearly shown, the postal codes for the sender addresses are identical to the recipient address's postal code. Id. at 45, 55. The letters contain statements indicating that Garrow and Gantt were married, Garrow pressed charges against Gantt in order to remain at a shelter, and Garrow desired to reunite with Gantt. See generally id. at 46–53, 56–71. Gantt further claims that Garrow provided false testimony against him out of fear of being incarcerated for possessing controlled substances. Traverse (Dkt. No. 13) at 3–8.

The County Court denied Gantt's unsupported motion to withdraw the plea. Dkt. No. 1-3 at 133:24–25. Trial counsel took exception to the ruling. Id. 134:20–22. Prosecution and

4

trial counsel asked the County Court to abide by the plea agreement. Id. at 135:2–15, 135:22–24. Gantt declined to address the County Court prior to sentencing. Id. 136:5–9. The County Court noted Gantt's extensive criminal history and multiple parole release revocations, found charges of criminal contempt to be most "alarming," and the negotiated sentence to be fair in light of Gantt's criminal history. Id. at 136:17–138:24. The County Court sentenced Gantt to concurrent and determinate prison terms of twelve years for each burglary count, five years of post-release supervision, five hundred dollars in restitution sought by the New York State Crime Victims Board, a mandatory surcharge and fees for a DNA sample, and an order of protection prohibiting Gantt from contacting Garrow. Id. at 139:3–22, 140:8–10.

On January 29, 2009, Gantt filed a counseled brief appealing his sentence. Dkt. No. 1-3 at 73–77. He argued that (1) the County Court erred in ordering him to pay restitution without first offering him the opportunity to withdraw his plea or accept the enhanced sentence and (2) his waiver of appeal does not preclude him from challenging the restitution order. Id. at 74. On May 27, 2009, the Appellate Division, Third Department, remitted the matter for the purpose of affording Gantt an opportunity to withdraw his plea or accept the restitution order, or the imposition of the sentence as promised in the plea agreement. People v. Gantt, 63 A.D.3d 1379, 1380 (3d Dep't 2009) (Dkt. No. 1-4 at 111–13).

### C. Resentencing Proceeding and Direct Appeal

On July 1, 2009, Gantt and trial counsel appeared before Judge Ryan for resentence. Dkt. No. 1-4 at 10–15. Gantt again moved to withdraw his plea. Id. at 11:15–13:4. The County Court imposed the original sentence without the restitution order. Id. at 14:7–23.

5

Trial counsel took an exception.  Id. at 14:24–15:3.

On March 29, 2010, Gantt filed a counseled brief appealing the resentence to the Appellate Division.  Dkt. Nos. 1-4 at 96–104, 9-4 at 2–15.  Gantt claimed that:  (1) his guilty plea was not intelligently, knowingly, or voluntarily made; (2) the County Court failed to afford him an opportunity to withdraw his guilty plea after failing to abide by terms of the plea agreement; and (3) he received ineffective assistance of trial counsel.  Id. at 99.  On October 7, 2010, the Appellate Division affirmed the judgment, noting that their order remitting the matter did not require the County Court "to afford defendant the opportunity to withdraw his plea."  People v. Gantt, 77 A.D.3d 988, 989 (3d Dep't 2010) (citing People v. Schwickrath, 40 A.D.3d 1218, 1219 (2007), People v. Toms, 2 A.D.3d 897, 898 (2003)).  The Appellate Division rejected the remaining claims as they should have been raised on appeal from the original judgment of conviction, not on an appeal from resentencing.  Id. (citing People v. Ryder, 239 A.D.2d 364, 365 (1997), lv. denied, 90 N.Y.2d 910 (1997), People v. Cahill, 190 A.D.2d 744, 744–45 (1993), lv. denied, 81 N.Y.2d 883 (1993), People v. Foster, 42 A.D.2d 801, 801 (1973)).

On October 29, 2010, Gantt filed a counseled motion in the Appellate Division to reargue the appeal and for leave to appeal to the New York Court of Appeals ("Court of Appeals").  Dkt. No. 9-8.  On January 10, 2011, the Appellate Division denied that motion.  Dkt. No. 9-10.

### D.  Motion to Vacate Judgment of Conviction

On November 5, 2010, Gantt, proceeding pro se, moved to vacate his judgment of conviction pursuant to New York Criminal Procedure Law ("CPL") § 440.10.  Dkt. No. 1-6 at

5–43.  Gantt argued that:  (1) the County Court relied on improper sentencing considerations; (2) prosecution made inflammatory remarks at sentencing; (3) trial counsel was ineffective; (4) the guilty plea was not knowingly, voluntarily, and intelligently made; and (5) the County Court should have permitted him to withdraw his plea.  Id. at 22–43.

On December 27, 2010, the County Court denied Gantt's CPL § 440.10 motion.  Dkt. No. 1-6 at 95–98.  Without addressing the improper sentence and prosecutorial misconduct claims, the County Court reasoned that it was required to deny the motion because Gantt's leave application to appeal to the Court of Appeals was still pending.  Id. at 96–97 (citing CPL § 440.10(2)(b), which states in part, "the court must deny a motion to vacate a judgment when . . . the judgment is, at the time of the motion, appealable or pending on appeal, and sufficient facts appear on the record with respect to the ground or issued raised upon the motion to permit adequate review . . . .").  Furthermore, the County Court held that Gantt's claims were without merit.  Id. at 97–98.

On February 22, 2011, Gantt sought leave to appeal the CPL § 440.10 motion to the Appellate Division.  Dkt. No. 9-15.  On April 20, 2011, the Appellate Division denied that leave application.  Dkt. No. 9-17.

### E.  Petition Before the Court

By petition for writ of habeas corpus dated April 18, 2012,[3] Gantt contends that:  (1) his guilty plea was not knowingly, intelligently, and voluntarily made; (2) prosecution presented

---

[3] Pro se petitioners are deemed to have filed their habeas petitions on the date they turned them over to prison officials for mailing.  See Houston v. Lack, 487 U.S. 266, 270 (1988); Noble v. Kelly, 246 F.3d 93, 97 (2d Cir. 2001) (extending the "prisoner mailbox rule" to habeas petitioners), cert. denied, 534 U.S. 886 (2001).

perjured testimony before the grand jury; (3) prosecution withheld exculpatory evidence; and (4) trial counsel was ineffective in failing to inform him of the effects of the plea. Pet. at 9–10.[4] With respect to the second claim, Gantt alleged that Garrow's testimony was false and coerced. Id. at 9. As for the third claim, Gantt alleged that prosecution withheld from him a document showing that he was residing with Garrow. Id. at 10. This document lists a number of addresses associated with the following names: Mark Wade Gantt; Mark Ganti;

---

[4] Gantt's traverse raises the additional claims that (1) his sentence was based on improper considerations such as being sentenced more severely in electing to stand trial and (2) the prosecuting attorney held a "personal vendetta" against him because she was a survivor of domestic violence. Traverse at 23, 26–27.

Liberally construing Gantt's "pro se submissions [] 'to raise the strongest arguments that they suggest,'" Diaz v. United States, 517 F.3d 608, 613 (2d Cir. 2008), this Court interprets Gantt's improper sentence claim as proffering the same argument in his § 440.10 motion, that the County Court incorrectly applied the second violent felony offender statute, N.Y. Penal Law § 70.04, in sentencing him. Dkt. No. 1-6 at 22. Gantt cited to federal cases discussing errors of state law, arguing the County Court improperly used a twenty-year-old violent felony conviction in applying § 70.04 when the statute directs that the sentence for the predicate offense "must have been imposed not more than ten years before commission of the felony of which the defendant presently stands convicted." N.Y. PENAL LAW § 70.04(1)(b)(iv). Even though it is not addressed by the § 440.10 court, this claim is procedurally barred as there was a pending direct appeal. Id. § 440.10(2)(b). Gantt has failed to proffer any cause or prejudice or evidence of actual innocence for the default. See Section III infra. Moreover, federal habeas corpus relief is not available for alleged errors of state law that do not rise to the level of a constitutional violation. Estelle v. McGuire, 502 U.S. 62, 67–68 (1991) (citations omitted). Gantt has not shown which twenty-year-old conviction that the County Court had used, nor has he shown the absence of any violent felony convictions and sentences that could be used to trigger the statute. Thus, the improper sentence claim is meritless. Accordingly, Gantt's petition on this claim should be denied.

Turning to the remaining claim, Gantt's claim against the prosecuting attorney is unexhausted because it was never presented before a state court. The claim is not procedurally barred because it appears to concern matters outside the record and Gantt may raise the claim in a second § 440.10 motion. See Section II infra. Nevertheless, the claim is without merit. Gantt does not substantiate his claim that the prosecuting attorney was a survivor of domestic violence. Furthermore, Gantt fails to allege a specific instance in which the prosecutor exhibited bias against him. Ruiz v. U.S. Dep't of Homeland Sec., No. 07-CV-2615 (JG), 07-CV-5173 (JG), 2008 WL 899353, at *12 (E.D.N.Y. Apr. 1, 2008). Accordingly, Gantt's petition on this claim should be denied.

Mark Lawrence Gant; Mark W Grantt; Mark Wade Gant; Mark Gauft; Mark L Gaut; Mark W Gantt; and Mark Wade Gaint.  Dkt. No. 1-3 at 6–7.

## II.  Exhaustion[5]

It is well-settled that before seeking habeas review, a petitioner must first exhaust all state remedies.  28 U.S.C. § 2254(b), (c); Shabazz v. Artuz, 336 F.3d 154, 160 (2d Cir. 2003) (quoting Aparicio v. Artuz, 269 F.3d 78, 89 (2d Cir. 2001)).  Specifically, 28 U.S.C. § 2254(b)(1)(A) & (B) directs that

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>
> (ii) circumstances exist that render such process ineffective to

---

[5]  Martuscello concedes that Gantt's petition was timely made.  Martuscello Mem. (Dkt. No. 8-1) at 14.  Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), the one-year time period for filing a federal habeas corpus petition starts to run when the conviction becomes "final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A); Cook v. N.Y. State Div. of Parole, 321 F.3d 374, 279–80 (2d Cir. 2003).  A judgment of conviction becomes final at the conclusion of the ninety-day period during which the defendant could seek certiorari review from the United States Supreme Court.  Epps v. Poole, 687 F.3d 46, 49 (2d Cir. 2012) (citations and footnote omitted).  Here, Gantt's conviction became final on April 10, 2011, ninety days after the Appellate Division denied Gantt's leave application on January 10, 2011.  Thus, Gantt's time to seek a writ of certiorari expired on April 10, 2012.  However, the statute of limitation was tolled until April 20, 2011, while Gantt's leave application on his § 440.10 motion was pending.  Smith v. McGinnis, 208 F.3d 13, 16 (2d Cir. 2000) (citing 28 U.S.C. § 2244(d)(2)).  The limitations began to run on April 21, 2011 with a new expiration date of April 21, 2012.  Since the petition is dated April 18, 2012, the petition is timely made.

protect the rights of the applicant.

Id.

The exhaustion requirement is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." Coleman v. Thompson, 501 U.S. 722, 731 (1991). Thus, pursuant to § 2254(b)(1)(A), "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). State remedies are "properly exhausted" when the petitioner has "fairly presented" to the state court, O'Sullivan, 526 U.S. at 848, "both the factual and legal premises of the claim he asserts in federal court." Daye v. Attorney General of New York, 696 F.2d 186, 191 (2d Cir. 1982) (en banc) (citations omitted). The petitioner may fairly present the constitutional nature of his claim by

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, [or] (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

Id. at 194. In addition, the petitioner must seek discretionary review where it is available at the highest state court and raise the same federal constitutional claims. See O'Sullivan, 526 U.S. at 847–48; Brown v. Senkowski, 152 F. App'x 15, 17 (2d Cir. 2005). The petitioner bears the burden of proving exhaustion. Colon v. Johnson, 19 F. Supp. 2d 112, 119–20 (S.D.N.Y. 1998) (citations omitted).

In this case, the petition contains exhausted and unexhausted claims. Gantt exhausted

10

his first claim of an involuntary plea.  Gantt contends that his plea was invalid because he did not understand the terms and consequences of the plea.  Pet. at 9.  This claim was raised in the second direct appeal with citation to <u>Boykin v. Alabama</u>, 395 U.S. 238 (1969), which discusses the voluntary and knowing requirements of a valid plea.  Dkt. No. 1-4 at 102.  Gantt further sought from the Appellate Division, reargument or leave to appeal to the Court of Appeals on this claim, which was denied.  Dkt. No. 9-8 at 3.  Gantt could not appeal the Appellate Division's denial of leave to appeal.  "New York Criminal Procedure Law § 450.90 sets forth the instances in which appeals to the Court of Appeals are authorized.  New York courts have held that there is no statutory authority in . . . providing that Appellate Division denials of leave to appeal are reviewable by the Court of Appeals."  <u>Walker v. Graham</u>, 10-CV-5558 (PKC), 2013 WL 3338683, at *4 (E.D.N.Y. July 2, 2013) (citations omitted).   Therefore, this claim has been exhausted.

The second and third claims are not exhausted.  Gantt claims that prosecution allowed Garrow to testify falsely before the grand jury and withheld exculpatory evidence from trial counsel.  These claims were never presented to the Appellate Division.  Thus, these claims are unexhausted.

Gantt's fourth claim of ineffective assistance of trial counsel is unexhausted.  Gantt contends that trial counsel should have explained to him the terms and effects of the plea.  Pet. at 10.  Gantt raised this claim in his second direct appeal and a CPL § 400.10 motion.  Dkt. Nos. 9-4 at 12–14, 9-11 at 25–26.  However, in doing so, Gantt did not cite the Sixth Amendment or federal cases employing the relevant constitutional analysis.  Rather, Gantt relied on state cases that do not employ a constitutional analysis in like fact situations.  <u>See</u> Dkt. Nos. 9-4 at 12–13 (citing <u>People v. Bryant</u>, 180 A.D.2d 874 (3d Dep't 1992) (lacking

discussion of a federal basis for a claim of ineffective assistance of counsel); People v. Britt, 200 A.D.2d 401 (1st Dep't 1994) (same), 9-11 at 25 (citing the same)).  Gantt couched this claim solely in state law terms, failing to raise it in federal constitutional terms.  Daye, 696 F.2d at 194; see also Cornell v. Kirkpatrick, 665 F.3d 369, 376 (2d Cir. 2011) (citing Baldwin v. Reese, 541 U.S. 27, 32–34 (2004)) ("[M]ere mention of 'ineffective assistance of counsel' in a filing in the Appellate Division, without more, [is] insufficient to alert the New York courts to the possible federal basis of that claim.").  Thus, the ineffective assistance claim is unexhausted.

A claim that was not fairly presented to the state courts and does not satisfy the requirements of § 2254(b)(1) may still be "deemed" exhausted by the habeas court "if it is clear that the state court would hold the claim procedurally barred."  Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991) (collecting cases); Aparicio, 269 F.3d at 90 ("When a claim has never been presented to a state court, a federal court may theoretically find that there is an 'absence of available State corrective process' under § 2254(b)(1)(B)(i) if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile.").  Here, Gantt may return to state court and raise the unexhausted claims concerning coerced testimony and non-disclosure of exculpatory materials in a second CPL § 440.10 motion because those claims appear to fall outside the record.  See CPL § 440.10(3)(c) ("[T]he court may deny a motion to vacate a judgment when . . . [u]pon a previous motion made pursuant to this section, the defendant was in a position adequately to raise the ground or issue underlying the present motion but did not do so." (emphasis added)).  Accordingly, these two claims remain unexhausted and not procedurally barred.

As for Gantt's ineffective assistance claim, he cannot now raise it in state court because he already had one direct appeal to which he is entitled. Grey v. Hoke, 933 F.2d 117, 120 (1991) (citing N.Y. COURT RULES § 500.10(a)). Gantt cannot bring this claim in a second CPL § 400.10 motion because the claim is based on the record. CPL §440.10(2)(b)). As such, the ineffective assistance claim is deemed exhausted but procedurally barred. Ramirez v. Attorney General of State of New York, 280 F.3d 87, 94 (2d Cir. 2001).

Accordingly, Gantt's involuntary plea claim is exhausted, the claims based on coerced testimony and non-disclosure of exculpatory materials are unexhausted, and the ineffective assistance claim is unexhausted, deemed exhausted, and procedurally barred.

### III. Independent and Adequate State Law Ground

Federal habeas review of a question of federal law decided by a state court is prohibited if the state court rested its judgment "on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman, 501 U.S. at 729 (citations omitted) (noting that federal court resolution of the federal issue would merely be advisory where the state judgment is supported by independent and adequate state grounds); see also Harris v. Reed, 489 U.S. 255, 261–62 (1989); Cotto v. Herbert, 331 F.3d 217, 238 (2d Cir. 2003); Garcia v. Lewis, 188 F.3d 71, 76 (2d Cir. 1999); Levine v. Comm'r of Corr. Servs., 44 F.3d 121, 126 (2d Cir. 1995). "This rule applies whether the state law ground is substantive or procedural." Coleman, 501 U.S. at 729 (citation omitted). "Because it can be difficult to determine if the state law discussion is truly an independent basis for decision or merely a passing reference, . . . such reliance on state law must be clear from the face of the opinion." Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 809 (2d

13

Cir. 2000) (internal quotation marks omitted) (citing <u>Coleman</u>, 501 U.S. at 732, 735).  Thus, the mere existence of a state procedural default is not enough, as the Supreme Court explained,

> the state court must actually have relied on the procedural bar as an independent basis for its disposition of the case.  Moreover, we will not assume that a state-court decision rests on adequate and independent state grounds when the state court decision fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion.

<u>Caldwell v. Mississippi</u>, 472 U.S. 320, 327 (1985) (internal quotation marks and citations omitted).

In addition to being "independent," the state procedural bar must also be "adequate." <u>Cotto</u>, 331 F.3d at 239.  Adequacy requires a state procedural ground that is "strictly or regularly followed."  <u>Johnson v. Mississippi</u>, 486 U.S. 578, 587 (1988) (citations omitted).  A violation of such "firmly established and regularly followed" state rules would ordinarily be adequate to bar federal review.  <u>Cotto</u>, 331 F.3d at 239–40 (internal quotation marks omitted).  In an "exceptional case[] in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question[,]" the court considers three guideposts in determining whether a procedural bar is adequate to preclude federal review of claims raised in the petition:

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate

14

governmental interest.

Id. at 240. A claim that is procedurally defaulted due to an adequate and independent state law ground may also avoid the procedural bar if the petitioner shows cause for the default and actual prejudice, or a miscarriage of justice will result if the claims are not considered. Coleman, 501 U.S. at 750; DiGuglielmo, 366 F.3d at 135.

In this case, Gantt's involuntary plea and ineffective assistance claims were raised on appeal from resentence and in a § 440.10 motion. In the direct appeal, the Appellate Division held that these claims should have been raised on the first appeal, not on an appeal from resentencing. The Appellate Division cited to three state appellate cases, all of which relied on state case law. See People v. Ryder, 239 A.D.2d 364, 365 (1997), lv. denied, 90 N.Y.2d 910 (1997) ("Alleged errors committed at the trial may not be raised on an appeal from a resentence, regardless of whether or not they were raised on the appeal from the original judgment.") (citations omitted)); People v. Cahill, 190 A.D.2d 744, 744–45 (1993), lv. denied, 81 N.Y.2d 883 (1993) (same); People v. Foster, 42 A.D.2d 801, 801 (1973) (same); see also People v. Williams, 6 N.Y.2d 193, 196 (1959) (holding it is a "settled rule that a defendant may not procure a review of the original judgment of conviction by appeal from an order or judgment of resentence."). In the § 440.10 motion, the County Court denied the claim because it was a record-based claim that could only be raised on direct appeal. McCormick v. Morrisey, 770 F. Supp. 2d 556, 563 (W.D.N.Y. 2011) (citation omitted) (holding state court's reliance on §440.10(2)(b) to deny an ineffective assistance claim was independent and adequate state law ground).

Moreover, the guideposts indicate that reliance on procedural default is appropriate. First, the Appellate Division relied on Gantt's failure to raise his claim in the original appeal.

Similarly, the County Court expressly relied on § 440.10(2)(b). Second, New York requires compliance with these procedural rules. See Ryder, 239 A.D.2d at 365; Cahill, 190 A.D.2d at 744–45; Foster, 42 A.D.2d at 801; Williams, 6 N.Y.2d at 196; see also People v. Williams, 59 A.D.3d 172 (1st Dep't 2012) ("The court was correct in summarily denying the C.P.L. § 440.10 motion since sufficient facts appear on the record on the direct appeal to permit our review") (citing C.P.L. § 440.10(2)(b)). Finally, Gantt omitted this claim entirely from his original appeal and raised it in his appeal from the resentence and in a C.P.L. § 440.10 motion; thus, failing to substantially comply with the state procedural rules. Accordingly, Gantt's involuntary plea claim is procedurally defaulted.

As for cause and prejudice or a miscarriage of justice, neither is present in the record. Ineffective assistance of counsel may constitute cause and to successfully allege it, the petitioner must raise it as a separate and meritorious claim. Edwards v. Carpenter, 529 U.S. 446, 451–52 (2000). Even though Gantt raised ineffective assistance of trial counsel as a separate claim, as discussed infra, he has failed to demonstrate that the claim is meritorious. Thus, Gantt has failed to establish cause for overcoming the procedural bar. Because cause is not established, the Court does not need to reach the inquiry on prejudice. Horton v. Ercole, 557 F. Supp. 2d 308, 323 (N.D.N.Y. 2008) (citations omitted). As for the fundamental miscarriage of justice, Gantt does not allege new evidence tending to establish his actual innocence. While Gantt argues that Garrow's letters show his actual innocence, as discussed infra, such a contention is without merit. Therefore, Gantt's involuntary plea and ineffective assistance claims are procedurally defaulted.

## IV. Mixed Petition

A habeas petition containing both exhausted and unexhausted claims is a "mixed" petition. Rhines v. Weber, 544 U.S. 269, 271 (2005). "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). A district court confronted with a mixed petition has discretionary power to dismiss it in its entirety, or "stay the petition and hold it in abeyance while the petitioner returns to state court to exhaust his previously unexhausted claims." Rhines, 544 U.S. at 275. The stay-and-abeyance procedure is available only when the petitioner's failure to exhaust his claims was based on good cause. Id. at 277. However, even if good cause exists, granting a stay would be an abuse of discretion if the unexhausted claims are plainly meritless. Id. (citation omitted). Here, Gantt has not provided good cause for his failure to exhaust certain claims. Accordingly, this Court will review the merits of Gantt's claims.

## V. Merits

### A. Legal Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), a federal court may grant a writ of habeas corpus only if the state court's adjudication on the merits

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000); <u>Hawkins v. Costello</u>, 460 F.3d 238, 242 (2d Cir. 2006); <u>DeBerry v. Portuondo</u>, 403 F.3d 57, 66 (2d Cir. 2005).

The Supreme Court has given independent meaning to the "contrary to" and "unreasonable application" clauses in § 2254(d)(1). <u>Williams</u>, 529 U.S. at 405. "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." <u>Id.</u> at 412–13. As for the "unreasonable application" clause, a writ may be granted if "the state court's application of clearly established federal law was objectively unreasonable." <u>Id.</u> at 409, 413. "[A]n <u>unreasonable</u> application of federal law is different from an <u>incorrect</u> application of federal law." <u>Id.</u> at 410. In addition, the statutory phrase "clearly established Federal law . . . refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions . . . ." <u>Id.</u> at 412 (internal citations omitted).

The petitioner bears the burden of proving, by a preponderance of the evidence, that "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); <u>see</u> <u>also</u> <u>Smalls v. Batista</u>, 191 F.3d 272, 278 (2d Cir. 1999); <u>Jones v. Vacco</u>, 126 F.3d 408, 415 (2d Cir. 1997). Further, when evaluating a habeas petition, "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); <u>DeBerry</u>, 403 F.3d at 66.

On the other hand, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed <u>de</u> <u>novo</u>." <u>Dolphy v. Mantello</u>, 552 F.3d 236, 238 (2d Cir. 2009) (quoting

Spears v. Greiner, 459 F.3d 200, 203 (2d Cir. 2006)).  Furthermore, "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Harrington v. Richter, 131 S. Ct. 770, 784 (2011).  Because Gantt's claims based on prosecutorial misconduct were never adjudicated on their merits, the Court reviews the merits of those claims de novo.

## B.  Guilty Plea

The ultimate question of whether a guilty plea was knowing and voluntary is a question of federal law.  See Marshall v. Lonberger, 459 U.S. 422, 431 (1983).  It is well settled that "[t]he longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Hill v. Lockhart, 474 U.S. 52, 56 (1985) (internal quotation marks and citations omitted).  A plea of guilty is considered voluntary when entered by one fully aware of the direct consequences of the plea. Bousley v. United States., 523 U.S. 614, 618–19 (1998) (quoting Brady v. United States, 397 U.S. 742, 748-57 (1970)); see also Miller v. Angliker, 848 F.2d 1312, 1320 (2d Cir. 1988) ("[A plea] is deemed 'voluntary' if it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally") (citations omitted).  A plea of guilty is intelligent if the defendant is:  (1) advised by competent counsel; (2) in control of his mental faculties; and (3) made aware of the nature of the charge against him. Bousley, 523 U.S. at 618–19; see also Miller, 848 F.2d at 1320 ("[A] plea is deemed 'intelligent' if the accused had the advice of counsel and understood the consequences of

his plea, even if only in a fairly rudimentary way.") (citations omitted). Thus, a guilty plea is knowingly, intelligently, and voluntarily entered, when the court has advised the defendant of the consequences of the plea and conducted a sufficient inquiry to assure itself that defendant plead guilty because he was actually guilty.

In this case, the County Court found that the record and plea allocution established that Gantt's plea was both knowing and voluntary. During the plea colloquy, Gantt waived certain rights in exchange for a plea. On several occasions, the County Court granted Gantt an opportunity to confer with trial counsel before answering the County Court. Gantt's statements indicated that he understood the ramifications of pleading guilty and the waiver of certain rights, was satisfied with trial counsel's representation, and had sufficient time to consider the final plea offer. Gantt also stated that he understood he may be subjected to a more severe sentence after the County Court reviewed a pre-sentence report and he was subjected to enhance sentencing for future felony convictions.

Gantt contends the state courts unreasonably applied the above stated Supreme Court precedent because he did not understand the terms and consequences of the guilty plea. However, the record is devoid of any evidence substantiating such a claim. Gantt was made aware that he was to receive twelve years of imprisonment with five years of supervised release, a sentence that could be enhanced after the County Court reviewed a pre-sentence report. To the extent Gantt contends he was unaware that restitution payment was part of the plea, this claim is mooted by the resentencing proceeding.

Moreover, were Gantt to argue that he received faulty information with regard to the plea offer, Gantt must show that he was unaware of sentencing possibilities and receipt of accurate information would have made a difference in his decision to enter a plea. Williams

v. Smith, 591 F.2d 169, 172 (2d Cir.), cert. denied, 442 U.S. 920 (1979) (citation omitted). Here, Gantt makes no assertions as to what faulty information was conveyed to him nor how such information would have changed his decision to enter a plea. Gantt acknowledged that prosecution had explained the plea offer and Gantt took the plea. While at one point Gantt indicated his confusion with the terms of the plea by stating, "I understand it but I don't understand," the County Court allowed him to confer with trial counsel. Dkt. No. 1-3 at 95:14–96:10. Gantt then advised the court he understood the terms and wished to take the plea. Id. In short, the record clearly contradicts Gantt's challenge to his guilty plea. Gantt's plea was knowing, voluntary and intelligent. The County Court's decision was neither contrary to nor an unreasonable application of the clearly established Federal law as discussed above.

Accordingly, Gantt's petition on this claim should be denied.


## C. Perjured Testimony

It is well-settled that alleged deficiencies or errors in state grand jury proceedings are generally not cognizable on habeas corpus review. Davis v. Mantello, 42 F. App'x 488, 490 (2d Cir. 2002) (citing inter alia Lopez v. Riley, 865 F.2d 30, 32 (2d Cir. 1989) ("If federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are a fortiori foreclosed in a collateral attack brought in a federal court.")). "To establish prosecutorial misconduct premised upon the presentation of perjury, [petitioner] must first establish that perjury was committed; i.e. that the testimony was 'actually, and intentionally, false." Gibson v. Artus, No. 04-CV-820 (LEK), 2008 WL 9434482, at *14 (N.D.N.Y. Mar. 21, 2008) (collecting

cases).  A petitioner "must also establish that 'the prosecution knew, or should have known,

of the perjury." <u>Id.</u> (citation omitted).

Here, Gantt has neither established that Garrow's grand jury testimony was actually and

intentionally false nor prosecution knew or had reason to know that Garrow was allegedly

committing perjury.  First, Gantt does not specify what portion of Garrow's grand jury

testimony was false.  Second, the record evidence gives no indication that the letters

submitted to the Court allegedly exonerating Gantt were in fact produced by Garrow.  Third,

even assuming those letters were from Garrow to Gantt, their contents do not exonerate

Gantt.  At best, Garrow allegedly expressed sorrow that Gantt's sentence was more severe

than she had expected.  <u>See</u> <u>generally</u>, Dkt. No. 1-3 at 55–71.  In fact, the letters indicate

that Garrow was staying at a shelter because Gantt had assaulted her.  <u>Id.</u>  Given Gantt's

failure to show that Garrow has provided perjured testimony, Gantt also failed to establish

that the prosecution knew or should have known of the alleged perjury.

Accordingly, Gantt's petition on this claim should be denied.


### D.  Brady Violation

"The suppression by the prosecution of evidence favorable to an accused upon request

violates due process where the evidence is material either to guilt or to punishment."  <u>Brady</u>

<u>v. Maryland</u>, 373 U.S. 83, 87 (1963); <u>see</u> <u>also</u> <u>Kyles v. Whitley</u>, 514 U.S. 419, 431 (1995).

"The government's obligation to make such disclosures is pertinent not only to an accused's

preparation for trial but also to his determination of whether or not to plead guilty.  The

defendant is entitled to make that decision with full awareness of favorable material

evidence known to the government."  <u>Hill v. West</u>, 599 F. Supp. 2d 371, 379 (W.D.N.Y.

2009) (citation omitted). "It is well settled that evidence 'is not considered to have been suppressed within the meaning of the <u>Brady</u> doctrine if the defendant or his attorney either knew, or should have known of the essential facts permitting him to take advantage of [that] evidence.'" <u>United States. v. Torres</u>, 129 F.3d 710, 717 (2d Cir. 1997) (quoting <u>United States v. Gonzalez</u>, 110 F.3d 936, 944 (2d Cir. 1997)); <u>see</u> <u>also</u> <u>Leka v. Portuondo</u>, 257 F.3d 89, 100 (2d Cir. 2001).

Here, Gantt's claim based on the non-disclosure of exculpatory evidence must fail. Gantt alleged that prosecution withheld a document showing that he and Garrow shared the same residence; thus, he could not have committed burglaries against Garrow. However, this document does not indicate that Gantt had resided with Garrow at the time of the burglaries. Rather, the document only lists a number of names and addresses without connecting Gantt's name to Garrow's residence. While Gantt alleged that he did not possess this document until after taking the guilty plea, he failed to allege and show that prosecution failed to turn over this document to trial counsel. Furthermore, this information was not "suppressed" for Gantt would have known where he lived at the time of the burglaries. <u>Torres</u>, 129 F.3d at 717; <u>Leka</u>, 257 F.3d at 100. Moreover, "federal law does not require a prosecutor to present exculpatory evidence to a grand jury." <u>Warren v. Ercole</u>, No. 07-CV-3175 (JG), 2007 WL 4224642, at *10 (E.D.N.Y. Nov. 27, 2007).

Lastly, Gantt waived the claims of <u>Brady</u> violations by pleading guilty when he "solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea . . . ." <u>Tollett v. Henderson</u>, 411 U.S. 258, 267

23

(1973); <u>Canal v. Donelli</u>, No. 06-CV-1490 (TJM/DRH), 2008 WL 4287385, at *3 (N.D.N.Y. Sept. 17, 2008) ("an unconditional guilty plea waives all claims . . . relating to events prior to the guilty plea that did not affect the voluntariness of the plea" (citations omitted)); <u>see</u> <u>also</u> <u>Ariola v. LaClair</u>, No. 07-CV-57 (GLS/VEB), 2008 WL 2157131, at *12–13 (N.D.N.Y. Feb. 20, 2008) ("[A] defendant's guilty plea cured any possible deficiency in the grand jury proceeding." (collecting cases)).

Accordingly, Gantt's petition on this claim should be denied.


### E. Ineffective Assistance of Trial Counsel

The Sixth Amendment mandates that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S. CONST. amend. VI.  "[T]he right to counsel is the right to the effective assistance of counsel."  <u>McMann v. Richardson</u>, 397 U.S. 759, 771 n.14 (1970).  To prevail on this claim, petitioner must satisfy a two-prong test showing that his counsel's performance was deficient and that such deficient performance caused actual prejudice to the petitioner.  <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984).  "Deficient performance" requires petitioner to show that counsel's performance "fell below an objective standard of reasonableness."  <u>Murden v. Artuz</u>, 497 F.3d 178, 198 (2d Cir. 2007) (quoting <u>Strickland</u>, 466 U.S. at 688).  "Prejudice" requires petitioner to show that there is a reasonable probability that, but for counsel's deficient performance, the outcome would have been different.  <u>Strickland</u>, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u>

Federal courts apply a "highly deferential" standard of review for a claim of ineffective

assistance of counsel alleged in a habeas corpus petition.  <u>Premo v. Moore</u>, 131 S. Ct. 733, 740 (2011) (collecting cases).  A federal habeas court must not equate unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d) for once the latter applies, "the question is not whether counsel's actions were reasonable . . . [but it is] whether there is any reasonable argument that counsel satisfied <u>Strickland's</u> deferential standard."  <u>Id.</u>

The County Court's decision on the ineffective assistance claim is neither contrary to nor an unreasonable application of the federal legal standard delineated above.  Trial counsel's performance did not fall below an objective standard of reasonableness and was not deficient.  <u>Murden</u>, 497 F.3d at 198.  Gantt contends that trial counsel failed to inform him the particular effects of the plea and the sentencing exposure associated with the plea. The record belies this claim.  In light of the severity and numerosity of charges pending against him, Gantt's twelve-year prison sentence is a favorable sentence.  The indictment charged Gantt with crimes committed on separate dates, which subjects Gantt to substantial exposure to consecutive sentences.  <u>See</u> Dkt. No. 1-5 at 26–39; N.Y. PENAL LAW § 70.25. Moreover, Gantt was charged with rape in the first degree, a violent felony sex offense, which alone carries a maximum prison term of twenty-five years.  Dkt. No. 9-1 at 30–31; <u>see</u> N.Y. Penal Law §§ 70.02, 70.80, 130.35.  Both the County Court and prosecution explained the plea agreement to Gantt and Gantt acknowledged that he understood the terms of the negotiated plea.  Furthermore, Gantt proffers no facts, nor does the record indicate otherwise, that but for trial counsel's deficient performance, he would not have entered such a favorable plea.  <u>Strickland</u>, 466 U.S. at 694.

Gantt argued before the Appellate Division that trial counsel (1) "half heartedly" requested the County Court to allow him to withdraw his guilty plea despite his mental

health issues and difficulty in understanding the plea allocution and (2) failed to join in the motion to withdraw or file a formal motion to withdraw the plea. Dkt. No. 9-4 at 12–13. However, Gantt stated under oath that he had consulted with trial counsel and was satisfied with the representation. Cf. Salerno v. Berbary, 389 F. Supp. 2d 480, 484–85 (W.D.N.Y. 2005) (rejecting challenge to validity of guilty plea where sworn statements at plea allocution contradict allegations in habeas proceeding). Further, the plea colloquy shows the County Court permitting Gantt to confer with trial counsel at various times.

Furthermore, it is well-settled that a failure to object is not prejudicial under Strickland if the objection would not have been sustained. Lafler v. Cooper, __ U.S. __, 132 S. Ct. 1376, 1386 (2012); Dowtin v. Cohen, No. 99-CV-323, 2005 WL 697981, at *26 (E.D.N.Y. Mar. 25, 2005), aff'd, 179 F. App'x 737 (2d Cir. 2005). Here, the County Court did not have a basis to allow Gantt to withdraw his plea. Moreover, trial counsel was not unreasonable in declining to join in the plea withdrawal application. As noted, Gantt's sentencing exposure surpassed the twelve-year sentence, which is favorable to Gantt. Finally, Gantt never adduced any evidence, such as an affidavit, showing difficulties in entering the plea. Montstream v. Superintendent, Bedford Hills Corr. Facility, No. 06-CV-0787, 2011 WL 284461, at *6 (W.D.N.Y. Jan. 4, 2011) (denied ineffective assistance claim where petitioner "never . . . substantiate[d] her assertion that trial counsel's alleged off-the-record statements overbore her will and coerced her into pleading guilty"). Therefore, the County Court's decision on this claim satisfies the AEDPA standard fo review.

Accordingly, Gantt's petition on this claim should be denied.

## VI. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that Gantt's petition for a writ of habeas corpus (Dkt. No. 1) be **DENIED**.

It is further **RECOMMENDED** that no certificate of appealability should be issued with respect to any of Gantt's claims as Gantt has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2). <u>See</u> 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."); <u>see</u> <u>also</u> <u>Lucidore v. New York State Div. of Parole</u>, 209 F.3d 107, 112 (2d Cir. 2000).

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  <u>Roldan v. Racette</u>, 984 F.2d 85, 89 (2d Cir. 1993); <u>Small v. Sec'y of HHS</u>, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated:  November 25, 2013
       Albany, New York

Christian F. Hummel
U.S. Magistrate Judge